Hoesbi,owjer, 0. J.
On the 24th of January, 1837, administration was granted by the Surrogate of the county of Monmouth, to Holmes and Davis, the plaintiffs in Certiorari. In April term, 1807, the Orphans’ Court of that county, revoked the letters of administration so granted, and granted administra-, tion to Robert T. Morris the defendant in Certiorari. The first question to be settled is, whether a Certiorari will lie to a decree of the Orphans’ Court, upon the right of administration ?
By the twenty-first section of the statute {Reo. Laws, 782) the Surrogate is authorized to grant letters of administration, but it provides that “ wherever disputes happen, respecting the right of administration, he shall issue citations to all persons concerned, to appear at the next Orphans’ Court, when the cause shall be heard and determined in a summary way, subject to an appeal to the Prerogative Court, if demanded, &c. and further, that all proceedings of Surrogates, not brought as aforesaid, before the Orphans’ Court, shall in like manner be subject to an appeal to the Prerogative court, &e. And by the thirty-third section of the statute {Meo. Laws, 787) it is further enacted “ that all final sentences or decrees of the Orphans’ Court, where no appeal is given to the Prerogative Court, shall be subject to removal into the Supreme Court, by Certiorari, if applied for within ninety days,” &c.
Hence it is argued, that no Certiorari lies in this case, because the adverse party might have appealed from the proceeding of the Surrogate, or from the sentence and decree of the Orphans’ Court.
It is observable, however, that the twenty-first sec. does not, either in express terms, or by implication, take away the supervisory power of this court, by Certiorari, in either case, but simply gives an appeal to the Prerogative court, as well from the proceedings of the Surrogate, as from the decree of the Orphans’ *528 Court, when that court has passed upon the subject. But by the twenty-third section it is enacted that “all final sentences and decrees of the Orphans’ Court, where no appeal is given to the Prerogative Court, shall be subject to removal by Certiorari, into the Superior Court.” This enactment is virtually a declaration that no final sentence or decree of the Orphans’ Court, shall be removed by Certiorari into the Superior Court, if an appeal to the Prerogative Court is given from such sentence or decree. The question then arises whether the sentence of the Orphans’ Court revoking the letters granted to Holmes and Davis, and giving the administration to Morris, is such a “ final sentence or decree,” as is contemplated in the twenty-third section. That it is so, I cannot doubt. That sentence or decree of the Orphans’ Court, as to the right of administration, (whether right or wrong in form, or upon the merits,) was certainly final and conclusive, between the parties, and must remain so, until reversed or set aside by some appellate jurisdiction. And since an appeal to the Prerogative Court, is expressly given by the twenty-first section from that sentence or decree, no Certiorari will lie, to remove it into this court. But then it is insisted on the other side, that the Orphans’ Court had no jurisdiction in the matter: that the party claiming administration adverse to Holmes and Davis, to whom administration was granted by the Surrogate, ought to have appealed to the Ordinary instead of proceeding by citation in the Orphans’ Court. And if this be so, a Certiorari will no doubt lie to set aside such unauthorized proceeding of that Court. In answer to this however, it is argued, and I think unanswerably, that it is a ease directly within the jurisdiction of the Orphans’ Court, by the very terms of the statute. The Surrogate, may grant letters of administration, and if no dispute arises, tney are valid and effectual, but the statute says, “ wherever disputes happen respecting the right of administration, the Surrogate shall issue citations,” &c., and the Orphans’ Court are directed, upon the returns of such- citations, to hear and determine the matter in a summary way, (section 21.) Here a dispute did happen.— The right of Holmes and Davis to have administration, was denied by Robert P. Morris, and it thereupon became the duty of the Surrogate to refer the matter to the Orphans’ Court, by citing the parties to appear before that tribunal. The doctrines *529 contended for by the plaintiff’s counsel, proceeds upon the idea, that the action of the Surrogate supersedes the jurisdiction of the Orphans’ Court; and that whenever administration can begot at the hands of the Surrogate, before any dispute actually arises about the right of administration, the only appeal is to the Prerogative Court. This would be to put it in the power of the Surrogate, at his pleasure, to oust the jurisdiction of the Orphans’ Court, which cannot be admitted.
But this point has been directly decided by the Prerogative Court, in the two cases cited by defendant’s counsel, from the records of that court. In Lumpkins v. Gibbs, administrator of Lumpkins, (Register No. 2, p. 74, in 1814) the Surrogate of Salem county granted administration to Gibbs, in preference to the next of kin ; a citation was thereupon issued, calling upon Gibbs to shew cause before the Orphans’ Court, why the letters of administration should not be revoked, &c., and upon the hearing, that court affirmed the letters of administration. From that decree, an appeal was taken to the Prerogative Court, and the Ordinary in giving his opinion, says, after stating that the Surrogate of Salem erred in granting administration to a stranger in preference to the next of kin : “ that the Orphans’ Court had jurisdiction, and erred in not revoking,” &c.
The other is the case of a will, (Register, No. 2, p. 102,) in which the Surrogate had granted probate, no caveat being filed, or dispute existing, so far as the Surrogate knew. Afterwards a controversy arose about the will, and the party interested applied to the Orphans’ Court, praying to be heard, &c. The executor was thereupon cited to shew cause, &c., but upon the hearing, the Orphans’ Court decided that they had no jurisdiction, and dismissed the proceedings. Upon an appeal to the Prerogative Court, the Surrogate General decided, “ that notwithstanding the paper purporting to be the will of C. B. had been admitted to probate, by the Surrogate, it was examinable by the Orphans’ Court, and within their jurisdiction, and that the court erred in quashing the citation, and in dismissing the parties without examining into the complaint, and accordingly the Prerogative Court reversed the decree of the Orphans’ Court, and directed them to proceed and enquire into the validity of the will, and give sentence according to law.
*530 I have quoted these cases from the brief of counsel, and if rightly extracted, as I presume they were, from the Register, they settle the construction of the statute, and shew that the Orphans’ Court had a right to review the proceedings of the Surrogate in this matter, and to revoke the letters granted by him.— If the Orphans’ Court have erred, either in the form of their proceedings, or in the sentence they have rendered, an appeal lies to the Prerogative Court, and consequently, by the terms of the statute, (sect. 33.) no Certiorari can be sustained.
It is true, the above cases were decided under the law as it stood in 1814 and 1815, (Pat. Rev., p. 62, see. 15,) but the act of 1820, (Rev. Laws, 782, sec. 21,) is, in relation to this matter, substantially the same. But the plaintiff’s counsel supposes the case of TenBrook v. McColm, and ux, 5 Halst. 333, stands opposed to the foregoing decisions. On the contrary, the reasoning of the court, and the grounds of the judgment in that case, are, in my opinion, in perfect accordance with the cases cited from the Register. In TenBrook v. McColm, this court sustained the Certiorari, as the proper remedy, expressly upon the ground that the Orphans’ Court had no power to revoke, as they did in that case, the letters of guardianship in question, and consequently, that court haying no jurisdiction of the matter, no appeal to the Prerogative Court, was given by the statute in such a case. The question arose, under the twenty-seventh section of the act (Rev. Laws, 784) prescribing the powers and duties of the Orphans’ Courts, “relative to the admission of guardians,” and which are, by the express language of the sec., “ to be exercised by that court, subject to an appeal to the Prerogative Court.”— Hence, Chief Justice Ewing was anxious, for the sake of the appeal, to find authority in that section for the Orphans’ Court to revoke letters of guardianship; but failing to do so, the Certiorari, was sustained.
Under the eighteenth section of the act of 1784 (Pat. Rev. 63,) the Orphans’ Court had power to appoint guardians, but no appeal was given by the statute, to the Prerogative Court, from such proceeding. Accordingly we find in the case of Eldridge v. Lippencott, Coxe, R. 397, the Ordinary refused to sustain any appeal from an order or- decree of the Orphans’ Court, appointing a guardian, and the matter was afterward brought *531 into this court upon Certiorari, and the decree affirmed.— In my opinion, therefore, the Certiorari must be quashed, and henee it becomes unnecessary to discuss the errors assigned by the plaintiffs, in the proceedings below.
Let the Certiorari be quashed, with costs.
Ford, J. wrote a concurring opinion which has not been handed to the Reporter. White, J. and Dayton, J. concurred.

Certiorari quashed, wHh eosts.